734 So.2d 1090 (1999)
MIHEVIC CORPORATION, Appellant/Cross-Appellee,
v.
HORIZON VILLAGE, INC., Appellee/Cross-Appellant.
No. 98-02999.
District Court of Appeal of Florida, Second District.
April 9, 1999.
Rehearing Denied June 10, 1999.
*1091 Robert L. Donald of Law Office of Robert L. Donald, Fort Myers, and Stephen E. Dalton of Pavese, Garner, Haverfield, Dalton, Harrison & Jensen, LLP, Fort Myers, for Appellant/Cross-Appellee.
Robert B. Burandt of Roosa, Sutton, Burandt & Adamski, L.L.P., Cape Coral, for Appellee/Cross-Appellant.
PATTERSON, Judge.
The Mihevic Corporation, owner of Horizon Village Mobile Home Park (the Owner), appeals from a partial summary judgment determining the issue of liability in favor of Horizon Village, Inc., the residents' association of the park (the Association), in this mobile home park dispute. The Association cross-appeals and raises a somewhat obscure issue pertaining to an August 1, 1996, notice that the Owner sent to the Association. We reverse the main action and dismiss the cross-appeal for lack of jurisdiction.
In 1997, the Association sued the Owner to contest a change in the park's rent structure. Since 1989, the Owner had provided sewage service to the park residents by an on-site "package plant," and the cost of this service had been included in the residents' rent. The prospectus, however, provided that if sewer services became available from an outside provider, the Owner reserved the right to do away with the package plant and hook the park up to the provider's network. In 1996, such services became available from North Fort Meyers Utility, Inc.
On September 20, 1996, pursuant to section 723.037(1), Florida Statutes (1995),[1] of the Florida Mobile Home Act, the Owner sent notice to the residents and the Association, informing them that as of January 1, 1997, the cost of sewage service would no longer be included in the rent and an outside utility company would provide sewage service. The notice stated that each tenant's rent would be reduced by $9.75, representing the Owner's cost of providing sewage service in past years. Thus, when the Owner sent its notice on September 20, 1996, informing of a January 1, 1997, reduction in services provided by the Owner, it fully complied with the ninety-day notice requirement of section 723.037(1). The Association and the Owner met to discuss the change and entered into mediation, as provided for in section 723.037. Thus, the purpose of the notice was also fully satisfied, as the Association had sufficient notice to object to the change.
As it turned out, however, when the utility company sent its first bill in February, the bill was for services commencing on December 11, 1996, less than ninety days from the date the Owner sent the *1092 notice. The Owner refunded each resident $6.72, representing a per diem refund calculated on the utility company's base rate. The Owner concedes that it is responsible for the actual sums billed to the residents for the month of December. The Owner testified that the utility company represented that service would not begin before January 1, 1997. The utility company representative admitted discussing January 1, 1997, as the starting date with the Owner, although the utility representative apparently knew the service was likely to begin before that date.
Based on these circumstances, the trial court determined that the notice was invalid and the Owner was liable to repay substantial amounts of money to the residents. The circumstances, however, indicate that the Owner complied with the Mobile Home Act in sending out a ninety-day notice, but the actions of a third party, the utility company, caused the service to begin before the ninety days had expired. As the Owner argues, this case is analogous to Hobe Associates, Ltd. v. State, Department of Business Regulation, Division of Florida Land Sales, Condominiums, & Mobile Homes, 504 So.2d 1301 (Fla. 1st DCA 1987). In Hobe, the court held that the park owner's notice of rental increase was effective, even though a third party, the Division of Land Sales, had forbidden the owner from sending the notice because the Division mistakenly believed the notice was invalid. Similarly, the Owner here was not responsible for the utility company's actions which caused the new sewer service to begin before the end of the ninety-day period. Furthermore, the Owner refunded $6.72 to each resident for the December charges.
Based on Hobe and the fact that the purpose of section 723.037 was accomplished, we reverse the trial court's partial final judgment which finds the notice invalid. On remand, the Owner should be responsible for the residents' actual payments for December sewer bills, upon proof of what the residents paid to the utility company for December, with a credit for the $6.72 the Owner has already paid to each resident.
With respect to the cross-appeal, this court does not have jurisdiction on this interlocutory appeal because the partial final judgment does not dispose of the subject matter of the cross-appeal, which appears to be the propriety of the August 1996 notice of rent increase. In fact, the Association did not raise the propriety of the August notice of rent increase in its complaint. The judgment holds that the September 20, 1996, notice was invalid. The invalidation of the September notice does not affect the fact that there was a prior negotiated rent increase in August between the parties. Therefore, we dismiss the cross-appeal.
Reversed and remanded on main appeal; cross-appeal dismissed.
CAMPBELL, A.C.J., and GREEN, J., Concur.
NOTES
[1] Section 723.037(1), Florida Statutes (1995), provides in pertinent part:

(1) A park owner shall give written notice to each affected mobile home owner and the board of directors of the homeowners' Association, if one has been formed, at least 90 days prior to any increase in lot rental amount or reduction in services or utilities provided by the park owner or change in rules and regulations.